# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT CHEEVER and SIDNEY GLEASON, | ) |
| Plaintiffs, | ) |
| v. | ) Case. No. 20-CV-02555-JAR-KGG |
| JEFFREY ZMUDA, Secretary of the Kansas Department of Corrections, et al., | ) |
| Defendants. | ) |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AND IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Jeff Zmuda, Secretary of the Kansas Department of Corrections ("KDOC"), Shannon Meyer, Warden of Lansing Correctional Facility ("LCF"), and Sam Cline, Warden of El Dorado Correctional Facility ("EDCF"), submit this Memorandum in support of their Motion to Dismiss, and in the Alternative, for Summary Judgment. For the reasons stated herein, this Complaint seeking declaratory and injunctive relief should be dismissed for lack of jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Alternatively, the Complaint should be dismissed or summary judgment granted based upon Plaintiffs' failure to exhaust administrative remedies as required by law.

## NATURE OF THE CASE

The factual and legal premise for this lawsuit seeking declaratory and injunctive relief simply does not exist. Plaintiffs' Complaint is based upon the claim that the KDOC "automatically and permanently" places inmates under a capital punishment sentence ("CP inmates") in segregation until they die simply because of their CP status, not subject to any review, citing a

KDOC Policy, IMPP 20-104 I, B-16. Over the past year, however, the KDOC has made significant changes in the management of CP inmates culminating in a formally adopted change in the KDOC policy challenged in the Complaint, rendering moot the Eighth and Fourteenth Amendment claims in this lawsuit and the requested declaratory and injunctive relief. Alternatively, Defendants are entitled to judgment as a matter of law based on Plaintiffs' failure to exhaust their administrative remedies.

**STATEMENT OF MATERIAL FACTS AS TO WHICH
NO GENUINE ISSUE EXISTS[1]**

1. Plaintiff Scott Cheever is a CP inmate currently incarcerated at LCF.[2]

2. In 2008, Cheever was sentenced to death for his conviction of intentional/premeditated murder of a law enforcement officer.[3]

3. Plaintiff Sidney Gleason is a CP inmate currently incarcerated at EDCF.[4]

4. In 2006, Gleason was sentenced to death for his conviction of murder in the first degree.[5]

5. Both Cheever and Gleeson have committed disciplinary infractions such that they would not qualify for placement in the general population at this time under the general policy, Internal Management Policy and Procedure ("IMPP") 20-106, a policy not challenged in this Complaint.[6]

---

[1] Other than the exhaustion issue which may be resolved on summary judgment, all other issues may be resolved on a motion to dismiss because in ruling on jurisdictional facts, the Court has wide discretion to consider affidavits and other evidence without converting the motion to one for summary judgment. *SK Finance SA v. La Plata Cty., Bd. of Cty. Comm'rs*, 126 F.3d 1272, 1275 (10th Cir. 1997) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).
[2] Doc. 1 at ¶ 21.
[3] KASPER Report, attached as Exhibit A at 1-2, subject to judicial notice as per Fed. R. Evid. 201 and *O'Toole v. Northrop Grumman Corp.*, 499 F.3d 1218, 1225 (10th Cir. 2007); Doc. 1 at ¶ 21.
[4] Doc. 1 at ¶ 22.
[5] KASPER Report, attached as Exhibit B at 1-2, subject to judicial notice as per Fed. R. Evid. 201 and *O'Toole*, 499 F.3d at 1225; Doc. 1 at ¶ 22.
[6] Exhibit A at 3; Exhibit B at 3-5; Doc. 1 at ¶ 6 (citing IMPP 20-106); Declaration of Joel Hrabe, attached hereto as Exhibit C, at ¶ 6.

*Changes in CP inmate management policy*

6. Prior to 2019, the management of CP inmates was determined, in part, by IMPP 20-104 I, B-16.[7]

7. In 2019, the KDOC began the process of making changes to the CP management practices and policies. The KDOC provided a tour and opportunity for input by the attorneys with the Kansas Capital Defense Project, who favorably commented on changes made.[8]

8. In addition to receiving input from the Kansas Capital Defense Project, the KDOC also reviewed the practices of other states where CP inmates are housed in general population.[9]

9. On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. On March 12, 2020, Kansas Governor Laura Kelly declared a state of disaster emergency. On March 13, 2020, President Donald Trump declared a national emergency.[10]

10. With the emergency created by the pandemic, the implementation of further changes to CP management policies was slowed due to the issues presented by COVID-19.[11]

11. In November 2020, the KDOC assembled a multi-disciplinary team ("MDT") consisting of representatives from the unit team, classification administrator, legal department,

---

[7] Doc. 1 at ⁋ 2; IMPP 20-104 I, B-16; Declaration of Jeff Zmuda, attached hereto as Exhibit D, at ¶ 4.
[8] Hrabe Decl. at ¶ 4-6; Exhibit 1 to Hrabe Decl.
[9] Hrabe Decl. at ¶ 4-6.
[10] Kansas Sup. Ct. Admin. Order 2020-PR-016 (March 18, 2020), available at www.kscourts.org, and subject to judicial notice as per Fed. R. Evid. 201.
[11] Hrabe Decl. at ¶ 7.

security, behavioral health, health services, and deputy wardens for purposes of conducting reviews of CP Inmates.[12]

12. Secretary of Corrections Jeff Zmuda adopted Policy Memorandum to IMPP 12-136A (hereinafter "Policy Memorandum"), formally implementing changes to CP management which had already been in process. The Policy Memorandum supersedes and replaces the practices in IMPP 20-104 I, B-16, which is no longer in effect.[13]

### *Failure to exhaust administrative remedies*

13. Cheever never filed any grievances to the warden regarding his alleged "automatic and permanent placement in administrative segregation" or the review process (or alleged lack thereof) for CP inmates.[14]

14. Nor did Cheever file any appeals to the secretary of corrections regarding his alleged "automatic and permanent placement in administrative segregation" or the review process (or alleged lack thereof) for CP inmates.[15]

15. Gleason never filed any appeals to the warden regarding his alleged "automatic and permanent placement in administrative segregation" or the review process (or alleged lack thereof) for CP inmates.[16]

16. Nor did Gleason file any appeals to the secretary of corrections regarding his alleged "automatic and permanent placement in administrative segregation" or the review process (or alleged lack thereof) for CP inmates.[17]

---

[12] Hrabe Decl. at ¶ 8; Zmuda Decl. at ¶ 8.
[13] Zmuda Decl. at ¶ 3, 6; Exhibit 1 to Zmuda Decl.
[14] Declaration of Vickie Brungardt, attached hereto as Exhibit E, at ¶ 10.
[15] Brungardt Decl. at ¶ 11.
[16] Brungardt Decl. at ¶ 5-6.
[17] Brungardt Decl. at ¶ 5-6.

## QUESTIONS PRESENTED

I. Does the Complaint present a justiciable case or controversy, particularly for purposes of the declaratory and mandatory prospective injunctive relief requested?

II. As a matter of law, does the Eleventh Amendment bar Plaintiffs' § 1983 claims against the state officials in their official capacities?

III. Have Plaintiffs adequately exhausted their administrative remedies on all claims as required by the Prison Litigation Reform Act (PLRA)?

## ARGUMENT AND AUTHORITIES

*Standard on Rule 12(b)(1) motion to dismiss*

A motion to dismiss on mootness grounds is treated as a motion under Fed. R. Civ. P. 12(b)(1).[18] "A Rule 12(b)(1) motion can challenge the substance of a complaint's jurisdictional allegations in spite of its formal sufficiency by relying on affidavits or any other evidence properly before the court."[19] Indeed, when "a party attacks the factual basis for subject matter jurisdiction, the court may not presume the truthfulness of the factual allegations in the complaint, but may consider evidence to resolve disputed jurisdictional facts."[20] The movant's reliance on "evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment in such circumstances."[21] The party opposing the motion must then "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject

---

[18] *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995).
[19] *Id*.
[20] *SK Finance SA*, 126 F.3d at 1275 (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)).
[21] *Id*.

matter jurisdiction."[22] Additionally, the issue of Eleventh Amendment immunity falls under Rule 12(b)(1) as it "constitutes a bar to the exercise of federal subject matter jurisdiction."[23]

### *Summary judgment standard*

Summary judgment is required under Rule 56 of the Federal Rules of Civil Procedure when pleadings, affidavits, and any discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[24]

To determine whether a genuine issue exists, courts will view evidence in the light most favorable to the nonmoving party and will accept only reasonable inferences.[25] That said, the nonmoving party cannot create a genuine issue of fact by making allegations that are clearly unsupported by the record as a whole.[26] Further, any factual dispute must be not only genuine – "such that a reasonable jury could return a verdict for the nonmoving party,"[27] – but also material, as determined by substantive law.[28] Where there is no genuine dispute of material fact regarding just one of the essential elements a plaintiff must prove, then summary judgment must issue in the defendant's favor.[29] Fed. R. Civ. P. 56(b) provides that a motion for summary judgment may be filed "at any time until 30 days after the close of all discovery."

---

[22] *New Mexicans for Bill Richardson*, 64 F.3d at 1499 (citation and internal quotation marks omitted).
[23] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (quoting *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 558-59 (10th Cir. 2000)).
[24] Fed. R. Civ. P. 56(a); *Halley v. Huckaby*, 902 F.3d 1136, 1143 (10th Cir. 2018) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)).
[25] *See Allen v. Muskogee*, 119 F.3d 837, 839-40 (10th Cir. 1997).
[26] *Scott v. Harris*, 550 U.S. 372, 378-81 (2007).
[27] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[28] *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).
[29] *See Sports Unlimited, Inc. v. Lankford Enterprises, Inc.*, 275 F.3d 996, 999 (10th Cir. 2002) (citing *Adler*, 144 F.3d at 671).

**I.  Plaintiffs' claims seeking declaratory and injunctive relief are moot.**

With the changes in management to CP inmates in KDOC custody underway since 2019 and culminating in the formal adoption of the Policy Memorandum expressly superseding the policy challenged in the Complaint, Plaintiffs' challenge to KDOC's IMPP 20-104 I, B-16 "that automatically and permanently holds death-sentenced inmates in solitary confinement" ceased to be a "case" or "controversy" under Article III of the U.S. Constitution. A live controversy no longer exists. As a result, Plaintiffs' claims are constitutionally and prudentially moot.

**A. Plaintiffs' claims are constitutionally moot.**

"A case becomes moot—and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome."[30] "The crucial question is whether granting a present determination of the issues offered will have some effect in the real world."[31]

The Tenth Circuit has repeatedly held that a government's change in policy—such as the Policy Memorandum adopted by the KDOC—establishes mootness. A recent Tenth Circuit case, *Prison Legal News v. Fed. Bureau of Prisons*,[32] is precisely on point. There, the Tenth Circuit held that the plaintiff's constitutional claims challenging the Federal Bureau of Prison's ("BOP") rejection of eleven publications were rendered moot by the BOP's revision of its institutional policies.[33] Plaintiff complained that, among other things, the BOP violated his First Amendment rights by not allowing inmates at the prison to receive certain issues of an inmate publication.[34] The BOP rejected the publications because they contained articles that identified and discussed

---

[30] *New Mexico Health Connections v. United States Dep't of Health & Human Servs.*, 946 F.3d 1138, 1159 (10th Cir. 2019) (quoting *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (quotations omitted)).
[31] *Wyoming v. U.S. Dep't of Agriculture*, 414 F.3d 1207, 1212 (10th Cir. 2005).
[32] 944 F.3d 868, 879-80 (10th Cir. 2019).
[33] *Id*. at 873.
[34] *Id*.

BOP inmates or staff.[35] After the case was filed, the BOP made several formal revisions to their censorship policies that eliminated the former practice of rejecting publications and ultimately delivered the rejected publications to the inmate subscribers.[36] The BOP moved for summary judgment on all claims, relying on a declaration from a BOP warden attesting that the prior practices were prohibited and the BOP was to continue to abide by the new policy under which the publications would no longer be rejected.[37] The district court granted the BOP's motion, finding that "interim developments had mooted each of [plaintiff's] claims."[38] The Tenth Circuit affirmed the district court's decision, holding that "significant developments leading up to the parties' cross-motions for summary judgment rendered this case moot," where the Warden declared under penalty of perjury that the former, challenged policy would not be applied going forward.[39] The Tenth Circuit rejected Prison News' argument that the case was not moot because of the voluntary cessation exception to mootness, "because these developments satisfy the BOP's "formidable burden" to make "clear the [BOP's] allegedly wrongful behavior could not reasonably be expected to recur."[40]

Similarly, in *Brown v. Buhman*,[41] the Tenth Circuit reviewed a district court decision granting an injunction against a Utah County Attorney and denying the County Attorney's motion to dismiss, holding that the case should have been dismissed as moot when the County Attorney adopted a policy change regarding bigamy prosecutions. The Plaintiffs in the case were a plural family, with Mr. Brown legally married to one wife and "spiritually married" to three other "sister

---

[35] *Id.* at 874.
[36] *Id.* at 876-77.
[37] *Id.* at 877.
[38] *Id.*
[39] *Id.* at 882.
[40] *Id.* (citing *Brown v. Buhman*, 822 F.3d 1151, 1166 (10th Cir. 2016)) (internal quotations omitted).
[41] 822 F.3d 1151, 1155-78 (10th Cir. 2016).

8

wives."[42] After the airing of a reality television show featuring the Brown family, the local police department opened an investigation pursuant to Utah's bigamy statute.[43] Because the Browns feared prosecution, they moved to Nevada.[44] They then filed suit in Utah federal district court, asserting that the bigamy statute infringed on their First and Fourteenth Amendment rights.[45] In response, the Utah County Attorney adopted a formal policy providing that it would prosecute individuals for bigamy only in certain limited circumstances, which did not apply to the Browns.[46] The district court denied the Utah County Attorney's second motion to dismiss the case as moot, finding that the County Attorney had adopted the new policy strategically just to render the case moot and that the policy could be reversed in the future by a successor County Attorney.[47] The Tenth Circuit reversed the district court's decision, holding that once the Utah County Attorney's Office adopted the new policy, there was no longer a live dispute between the parties.[48]

This Court has also found mootness in cases involving a government's change in policy. In dismissing for lack of jurisdiction a prisoner's case requesting declaratory and injunctive relief regarding medical treatment, the Court recently discussed the mootness doctrine in *Crews v. Sawyer*,[49] explaining:

> Federal court jurisdiction requires a live case or controversy, making mootness a threshold inquiry. *United States v. Fisher*, 805 F.3d 982, 989 (10th Cir. 2015) (quoting *In re L.F. Jennings Oil Co.*, 4 F.3d 887, 889 (10th Cir. 1993)). Litigants must maintain a personal stake in the lawsuit and its outcome, or a case or controversy ceases to exist. A personal stake disappears if a litigant's injury is healed by an event and prospective relief is the only relief sought. *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997).

---

[42] *Id.* at 1156.
[43] *Id.*
[44] *Id.*
[45] *Id.* at 1155-57.
[46] *Id.* at 1155.
[47] *Id.*
[48] *Id.* at 1179.
[49] No. 19-2541-JWB, 2020 WL 1528502, **3-4 (D. Kan. Mar. 31, 2020).

9

The opinion went on to discuss the voluntary cessation exception to mootness, noting that while generally "the party claiming mootness based on cessation of conduct bears a heavy burden:"

> When the government is the party engaging in self-correction, however, this burden is lighter. *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) ("[G]overnment 'self-correction provides a secure foundation for mootness so long as it seems genuine.'"); *see also Rio Grande Silvery Minnow*, 601 F.3d at 1116 ("In practice, however, [the] heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case.").

In applying the standards to the facts and claims in that case, the Court found dismissal appropriate based upon mootness, finding that the government defendants were doing things differently, and that the change in directions seemed "genuine."[50] The Court found that plaintiff's concerns that the federal defendants might not give him the medical treatment he wished in the future too speculative to avoid dismissal.[51] The Court concluded that there was no basis for injunctive or declaratory relief, no case or controversy, and no basis for jurisdiction. It found it could not "accord [plaintiff] prospective relief that would have any effect in the real world."[52]

Here, too, Plaintiffs' prayer for injunctive and declaratory relief against a policy that no longer exists is moot. Secretary Zmuda's Declaration and the Policy Memorandum make clear that the KDOC has completely superseded its prior policy and practices regarding the management of CP inmates with the Policy Memorandum. The policy of which Plaintiffs complain—automatically and permanently placing CP inmates in segregation without review—"could not reasonably be expected to recur."[53] For the Court to order the KDOC to do what it is already doing

---

[50] *Id.* at *4 (quoting *Ghailani v. Sessions*, 859 F.3d at 1302).
[51] *Id.* (citing *Rio Grande Silvery Minnow*, 601 F.3d at 1117 ("[T]he 'mere possibility' that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy. A case 'cease[s] to be a live controversy if the possibility of recurrent of the challenged conduct is only a "speculative contingency."'") (citations omitted).
[52] *Id.* (quoting *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011)).
[53] *Brown*, 822 F.3d at 1166 (quoting *Already*, 568 U.S. at 91).

makes no sense, as the Tenth Circuit noted in *Silvery Minnow* where the review requested by the Plaintiffs had already taken place. The Court's order would have no effect in the real world. As in *Prison Legal News*, *Brown*, and *Crew*, Plaintiffs' claims are moot.

There are two exceptions to the mootness doctrine, neither one of which applies here.[54] One exception applies to claims that are capable of repetition yet evading review.[55] This is a "narrow" exception to be used only in "exceptional situations."[56] For this narrow exception to apply, Plaintiffs would have to prove that: (1) the challenged conduct necessarily ends too quickly to be fully litigated, **and** (2) there is a reasonable likelihood that Plaintiffs will be subjected to the same conduct again.[57] For instance, disputes involving abortion evade review because the relatively short duration of human gestation does not allow such matters to be fully litigated before the end of the pregnancy.[58] In contrast, when a case presents an issue which "does not have an inherent problem of limited duration," the case will not necessarily evade review in future litigation, and the exception to the mootness doctrine does not apply.[59]

Here, Plaintiffs are not able to satisfy either prong. First, Plaintiffs have been managed as CP inmates since 2006 and 2008, respectively, Doc. 1 at ¶¶ 21-22, and will remain managed as CP inmates until their sentences are either converted or carried out. Thus, Plaintiffs fail to satisfy the first prong. More importantly, Plaintiffs are unable to make the required showing that the alleged wrongful conduct is "*necessarily* of short duration."[60] Second, Plaintiffs cannot prove that the alleged conduct — automatic and permanent placement in administrative segregation without

---

[54] *N.M. Health Connections*, 946 F.3d at 1159.
[55] *Id.*
[56] *Jordan*, 654 F.3d at 1034 (internal quotation marks omitted).
[57] *N.M. Health Connections*, 946 F.3d at 1159.
[58] *See, e.g., Roe v. Wade*, 410 U.S. 113, 125 (1973).
[59] *Affiliated Ute Citizens of Utah v. Ute Indian Tribe of Uintah & Ouray Reservation*, 22 F.3d 254, 256 n.1 (10th Cir.1994).
[60] *Jordan*, 654 F.3d at 1036.

11

review —— is reasonably likely to occur again. In short, Plaintiffs can't show that their claims are capable of repetition yet evading review.

The other mootness exception applies to a "defendant's voluntary cessation of an alleged illegal practice which the defendant is free to resume at any time."[61] This exception doesn't save Plaintiffs' claims either.

Although courts have stated that on the voluntary cessation exception, a defendant must carry "the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur," *Prison Legal News*, 944 F.3d at 880-81 (quoting *Brown*, 822 F.3d at 1166), courts, including in the Tenth Circuit, have found that burden met when governmental officials have discontinued challenged practices and mooted a case.[62] Where courts decline to moot a controversy following a government officials' voluntary cessation, the decisions "rely on *clear showings* of reluctant submission [by governmental actors] and a desire to return to the old ways."[63] Moreover, "government actors in their sovereign capacity and in the exercise of their official duties are accorded a presumption of good faith because they are public servants, not self-interested private parties."[64] The Tenth Circuit has recognized that government "self-correction . . . provides a secure foundation for mootness so long as it seems genuine."[65]

Defendants have met their burden to show that they have not attempted "to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."[66] As the Secretary

---

[61] *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 892 (10th Cir. 2008); *see also Brown*, 822 F.3d at 1166.
[62] *Brown*, 822 F.3d at 1167; *Silvery Minnow*, 601 F.3d at 1116; *Unified Sch. Dist. No. 259, Sedgwick Cty., Kan. v. Disability Rights Ctr. of Kansas*, 491 F.3d 1143, 1149-50 (10th Cir. 2007).
[63] *Silvery Minnow*, 601 F.3d at 1117 (brackets and emphasis in original) (quoting 13C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.6, at 311 (3d ed.2008)).
[64] *Id.* at 1117 and n.15 (quotation omitted).
[65] *Id.* at 1118 (quoting 13C Wright, Miller & Cooper, § 3533.7, at 326); *see also N.M. Health Connections*, 946 F.3d at 1159 (citation omitted); *Brown*, 822 F.3d at 1167-68 (citation omitted).
[66] *Brown*, 822 F.3d at 1166.

of Corrections has attested and as the facts show, KDOC has been in the process of reviewing and changing its policy regarding the management of CP inmates since at least 2019 and has already made changes. Now, the Policy Memorandum has been formally adopted and the Secretary of Corrections has declared under penalty of perjury that the KDOC has adopted and is abiding by a new policy that supersedes and significantly changes all aspects of the prior policy of which Plaintiffs complain. The Policy Memorandum eliminates the practice of automatically placing CP inmates in administrative segregation based solely on their status as CP inmates, creates a four-step transition process to review each CP inmate's housing status, and provides 30-day reviews should placement in general population be deemed inappropriate based on a CP offender's current behavior or circumstances. The KDOC has demonstrated its good-faith commitment to reviewing and changing the way CP inmates are managed in Kansas, as demonstrated by the Policy Memorandum. There is no reason to believe that the Secretary would reverse course and revoke the Policy Memorandum, just adopted.

This case is like *Prison Legal News* and *Brown*. As in those cases, the KDOC has formalized a new policy, in writing, that supersedes the prior policy. There is no "clear showing" that the KDOC has reluctantly changed its policy regarding the management of CP inmates; neither do the facts suggest any desire by the KDOC "to return to the old ways."[67] Nor is there support for the conclusion that the Secretary's declaration, signed under penalty of perjury and submitted to the federal district court, is "a deliberate misrepresentation to the court," or a "sham for continuing possibly unlawful conduct."[68] The Complaint is moot, and Plaintiffs' claims must be dismissed.

---

[67] *See Silvery Minnow*, 601 F.3d at 1117.
[68] *Brown*, 822 F.3d at 1170 (citing *Silvery Minnow*, 601 F.3d at 1118).

Plaintiffs' request for declaratory relief does not change this analysis, nor avoid the need for an actual case or controversy. "Declaratory judgment actions must be sustainable under the same mootness criteria that apply to any other lawsuit."[69]

### B. Plaintiffs' claims are prudentially moot.

Even if the case were not constitutionally moot, this Court should, as a matter of prudence and sound discretion, stay its hand and withhold any determination on a decision that is no longer extant. Under the doctrine of prudential mootness, the court may dismiss an action, even where a controversy is not moot in the strict Article III sense, if it is "so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the *power* to grant."[70] As the Tenth Circuit has observed, dismissal may be the only equitable solution under such circumstances:

> [I]f events so overtake a lawsuit that the anticipated benefits of a remedial decree no longer justify the trouble of deciding the case on the merits, equity may demand not decision but dismissal. When it does, we will hold the case "prudentially moot." Even though a flicker of life may be left in it, even though it may still qualify as an Article III "case or controversy," a case can reach the point where prolonging the litigation any longer would itself be inequitable.[71]

That a Court should decline to "add the promise of judicial remedy to the heap" is especially true when a plaintiff "seek[s] an order forcing a department to take an action that it eventually agrees to take voluntarily."[72] Indeed, the prudential mootness doctrine has "particular applicability . . . where the relief sought is an injunction against the government."[73]

---

[69] *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016) (quoting *Silvery Minnow*, 601 F.3d at 1109-10).
[70] *Silvery Minnow*, 601 F.3d at 1121-22 (quoting *Fletcher v. United States,* 116 F.3d 1315, 1321 (10th Cir.1997)).
[71] *Winzler v. Toyota Motor Sales U.S.A., Inc.*, 681 F.3d 1208, 1210 (10th Cir. 2012) (citing 13B Charles Alan Wright, et al., *Federal Practice and Procedure* § 3533.1 (3d ed. 2008)).
[72] *Id.*
[73] *Southern Utah Wilderness Alliance v. Smith*, 110 F.3d 724, 727 (10th Cir.1997).

The KDOC has already addressed Plaintiffs' complaints. The Secretary has confirmed that the KDOC no longer places CP inmates in administrative segregation based solely on their status as CP inmates. The KDOC has implemented a comprehensive new formal written policy designed to meet the individual needs of each CP offender, with the ultimate goal of transitioning CP inmates into general population. A multidisciplinary team has been convened to conduct monthly reviews of each CP inmate's classification/housing status.[74]

Full recognition should be given to the fact that the KDOC began the work of overhauling the management of CP inmates more than a year prior to the commencement of this action and has proceeded with its efforts even in the midst of a global pandemic—a pandemic that has hit prisons particularly hard. Given Defendants' good-faith efforts, Plaintiffs' challenge to the KDOC's prior policy has "reach[ed] the point where prolonging the litigation any longer would itself be inequitable."[75] Further, the Supreme Court has long held that "[t]he federal courts do not sit to supervise state prisons, the administration of which is [of] acute interest to the states."[76] The Court should reject Plaintiffs' attempts to dictate the terms of the difficult task of managing a state prison system, particularly in the middle of a global, still uncontrolled, pandemic.

Thus, whether the Court evaluates this case through the lens of the traditional, constitutional inquiry or based on prudential considerations, the conclusion is the same: the circumstances have changed such that meaningful relief is no longer available.[77] The action must be dismissed for lack of subject matter jurisdiction.

---

[74] Members of this MDT include representatives familiar with the individual CP inmate's care, including the unit team, classification administrator, legal department, security, behavioral health, health services, and deputy wardens.
[75] *Winzler*, 681 F.3d at 1210.
[76] *Meachum v. Fano*, 427 U.S. 215, 229 (1976).
[77] *Silvery Minnow*, 601 F.3d at 1122.

15

### C. There is no "continuing violation" to enjoin via *Ex parte Young*.

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens."[78] "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity."[79] This jurisdictional bar applies regardless of whether a plaintiff seeks monetary or prospective relief."[80]

There is a narrow exception to sovereign immunity under *Ex parte Young*, which allows a plaintiff to seek prospective injunctive relief against a state official for *ongoing* violations of federal law.[81] Given the undisputable facts, there is no basis for prospective injunctive relief as Defendants are no longer "automatically and permanently" placing CP inmates in administrative segregation without review, per the Policy Memorandum. Eleventh Amendment immunity requires dismissal of Plaintiffs' claims.

The Eleventh Amendment bars the claims against Wardens Cline and Meyer for the additional reason that Plaintiffs have not, and cannot, show that Wardens Cline and Meyer have the power to perform the injunctive relief sought. "In *Ex Parte Young*, the Supreme Court noted that the state official must have the power to perform the act required in order to overcome the jurisdictional bar of the Eleventh Amendment."[82] While Plaintiffs make the bald allegation that Wardens Cline and Meyer "authorized or condoned" the prior policy, Plaintiffs have not shown that Wardens Cline and Meyer have the requisite policy-making authority within the KDOC to

---

[78] *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019) (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)).
[79] *Id.* (citing *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013)).
[80] *Klein v. Univ. of Kansas Med. Ctr.*, 975 F. Supp. 1408, 1415 (D. Kan. 1997) (citing *Johnson v. Wefald*, 779 F. Supp. 154, 155-56 (D.Kan.1991)).
[81] *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)) (emphasis added).
[82] *Klein v. Univ. of Kan. Med. Ctr.*, 975 F. Supp. 1408, 1417 (D. Kan. 1997) (citing *Ex Parte Young*, 209 U.S. at 157).

alter or enact a statewide policy. Nor could they, as the secretary of corrections is the sole official vested with the authority to make the department-wide policy changes Plaintiffs seek.[83] The Court lacks subject matter jurisdiction over Wardens Cline and Meyer as they lack the requisite authority to effectuate the injunctive relief Plaintiffs seek, and they must be dismissed from this case.

## II. Plaintiffs' claims are barred by the Prison Litigation Reform Act.

Federal law requires an inmate to exhaust administrative remedies before filing a civil action in federal court. Plaintiffs did not comply with the KDOC inmate grievance process prior to filing suit in this case; therefore, if this action is not dismissed for lack of jurisdiction, Defendants are entitled to judgment as a matter of law.

The Prison Litigation Reform Act ("PLRA") provides that "[no] action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[84] This requirement applies "[e]ven where the available remedies would appear to be futile at providing the kind of remedy sought."[85]

This mandatory requirement demands that a prisoner comply "with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."[86] "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion."[87]

---

[83] *See* K.S.A. § 75-5210(f) ("The *secretary* shall adopt rules and regulations for the maintenance of good order and discipline in the correctional institutions . . . [d]isciplinary rules and regulations may provide a system of punishment including segregation, forfeitures of good time earned, fines, extra work, loss of privileges, restrictions and payment of restitution.") (emphasis added).
[84] 42 U.S.C.§ 1997e(a).
[85] *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (internal quotation marks omitted).
[86] *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006).
[87] *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

17

"[T]he PLRA does not enable judges, by creative interpretation of the exhaustion doctrine, to prescribe or oversee prison grievance systems."[88]

The KDOC Grievance Procedure for Inmates is set forth in Article 15 of Chapter 44 of the Kansas Administrative Regulations, K.A.R 44-15-101, *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections."[89] An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden of the facility; and (4) appeal to the secretary of corrections.[90]

To exhaust their administrative remedies under the KDOC's policies, Plaintiffs were required to file grievances regarding each of their claims. Although Plaintiffs make the conclusory allegation that they "exhausted such administrative remedies as were available to them," Doc. 1 at ¶ 26, no evidence of exhaustion of the required four-step process is attached to the Complaint. To the contrary, the sworn statement of Vickie Brungardt demonstrates Plaintiffs did not properly complete the grievance procedure as required by the PLRA. Brungardt declares that Gleason never filed a grievance with the warden concerning his alleged automatic and permanent placement in segregation; nor did he file a grievance regarding the alleged lack of a review process.[91] Further, Gleason has never appealed a grievance response to the secretary of corrections.[92]

---

[88] *Hardeman v. Smith*, 764 F. App'x 658, 662 (10th Cir. 2019) (quoting *Jernigan*, 304 F.3d at 1032)).
[89] K.A.R. 44-15-101a(d).
[90] *See* K.A.R. 44-15-101(b) and (d), -102(a), (b), and (c). *Lewis v. Carrell*, No. 12-CV-3112-DDC-JPO, 2014 WL 4450147, at *7 (D. Kan. Sept. 10, 2014).
[91] Brungardt Decl. at ¶ 4.
[92] Brungardt Decl. at ¶ 5.

Similarly, Cheever never filed a grievance with the warden regarding his alleged automatic and permanent placement in segregation or the alleged lack of review process.[93] Nor did Cheever file an appeal to the secretary of corrections regarding his claims in this lawsuit.[94] Brungardt found that none of the three grievances Cheever has appealed to the secretary of corrections involved his claims in this lawsuit.[95]

Plaintiffs "may not successfully argue that [they] [] exhausted [their] administrative remedies by, in essence, failing to employ them."[96] Nor can they argue that futility saves their § 1983 claims.[97] Even where matters are expressly "'non-grievable' under prison policy," if prison authorities nonetheless "have the power to render some of the relief requested," then exhaustion of administrative remedies is required.[98] Here, KDOC clearly had the power to render "some of the relief requested" had Plaintiffs availed themselves of the proper grievance procedures. They did not do so, and as a result Defendants are entitled to judgment as a matter of law.

## CONCLUSION

For all of the reasons stated herein, Secretary of the KDOC Jeff Zmuda, EDCF Warden Sam Cline, and LCF Warden Shannon Meyer, request that this action against them be dismissed for lack of jurisdiction or, in the alternative, summary judgment granted in their favor based on Plaintiffs' failure to exhaust their administrative remedies as required.

---

[93] Brungardt Decl. at ¶ 9.
[94] Brungardt Decl. at ¶ 10.
[95] In 2010, Cheever appealed two grievances regarding his transfer to LCF, visitation with his mother, and art supplies. In 2011, Cheever appealed a grievance regarding his visitation privileges being suspended after he was found to have homemade alcohol in his cell. None of these three grievances concerned the KDOC's policy of automatically and permanently placing Cheever in administrative segregation without review.
[96] *Morris v. Fallin*, 798 F. App'x 261, 269 (10th Cir. 2020) (quoting *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010)).
[97] *Jernigan*, 304 F.3d at 1032; *Sparks v. Foster*, 241 F. App'x 467, 474 (10th Cir. 2007) (plaintiff's "claim the administrative procedures were futile does not excuse a lack of exhaustion").
[98] *Beaudry v. Corr. Corp. of Am.*, 331 F.3d 1164, 1167 (10th Cir. 2003); *see also Toevs v. Milyard*, 563 F. App'x 640, 644 (10th Cir. 2014).

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Natasha M. Carter
Natasha M. Carter, KS No. 26074
Kathleen M. Barceleau, KS No. 28401
Assistant Attorneys General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Phone: (785) 296-2215
Fax: (785) 291-3767
Email: natasha.carter@ag.ks.gov
Email: kathleen.barceleau@ag.ks.gov
*Attorneys for Secretary Zmuda, Warden Cline, and Warden Meyer*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 20, 2021, the above and foregoing was filed with the clerk of the court by using the CM/ECF system which will send notice of electronic filing to the following:

W. Perry Brandt
Fred L. Sgroi
Logan M. Rutherford and
Cassandra R. Wait
Bryan Cave Leighton Paisner, LLP-KCMO
*Attorneys for Plaintiffs*

s/ Natasha M. Carter
Natasha M. Carter
Assistant Attorney General