IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SCOTT CHEEVER and SIDNEY GLEASON,<br><br>    Plaintiffs,<br><br>    v.<br><br>JEFFREY ZMUDA, Secretary of Corrections, et al.,<br><br>    Defendants. | Case No. 20-2555-JAR-KGG |

**MEMORANDUM AND ORDER**

Plaintiffs Scott Cheever and Sidney Gleason bring this action challenging a Kansas Department of Corrections ("KDOC") policy that automatically and permanently holds death-sentenced inmates in solitary confinement until their capital sentence is overturned or they die. Plaintiffs name their prison wardens Sam Cline and Shannon Meyer as Defendants, as well as Secretary of the KDOC, Jeffrey Zmuda. Before the Court is Defendants' Motion for Sanctions (Doc. 16) under Fed. R. Civ. P. 11(b) and 28 U.S.C. § 1927. The motion is fully briefed and the Court is prepared to rule. As described more fully below, the Court denies Defendants' motion for sanctions.

**I.    Background**

On November 6, 2020, Plaintiffs Scott Cheever and Sidney Gleason filed the instant Complaint. At that time, Internal Management Policy and Procedure ("IMPP") 20-104 I.B.16 governed KDOC placement of death-sentenced inmates. Under this provision, an inmate who was sentenced to death after conviction for a capital offense was placed in solitary confinement (called "administrative segregation") automatically. Under that IMPP, such inmates were

"not . . . subject to the periodic Program Management Committee reviews required within the provisions of IMPP 20-106 unless there [was] some departure from their capital status."[1] Regardless of their behavior, death-sentenced inmates such as Plaintiffs could not obtain review of or challenge their administrative segregation under this provision—administrative segregation could end only if their death sentence was overturned or by their death.

Plaintiffs plead that KDOC policy and procedure denied death-sentenced inmates such as Plaintiffs meaningful human contact for years on end, and that Plaintiffs each have been denied such contact for over a decade. Plaintiffs allege that the KDOC's policy and procedure that places death-sentenced inmates in automatic and indefinite administrative segregation "is extreme, debilitating, and inhumane, violates contemporary standards of decency, and poses an unreasonable risk of serious harm to the health and safety of Plaintiffs."[2] In paragraph 26 of the Complaint, Plaintiffs allege that they "have exhausted such administrative remedies as were available to them."[3]

On October 30, 2020, several days before the Complaint was filed, Chief Legal Counsel for the KDOC, Jeff Cowger, sent Plaintiffs' counsel an email explaining the KDOC's plan to implement an "incremental approach" to integrating capital offenders into the general prison population. The email stated that some measures "ha[d] been ongoing for a period of time," and that "formalized implementation" of the new policies and procedures would begin on January 1, 2021. The email described the upcoming changes, including the creation of a multi-disciplinary review team ("MDT") that would review each capital inmate's placement status at each step of a four-step process.

---

[1] Doc. 1 ¶ 2.
[2] *Id.* ¶ 3.
[3] *Id.* ¶ 26.

On January 20, 2021, the KDOC adopted a Policy Memorandum to IMPP 12-136A, formally implementing changes to the housing and management of capital inmates. The Policy Memorandum supersedes "[a]ll previous policies, procedures or practices related specifically to long term administrative segregation of CP residents," including IMPP 20-104 I.B.16.[4] It provides: "All newly admitted residents convicted of a capital offense after the date of this Policy Memorandum will not be placed in administrative segregation based solely on that conviction."[5] It also provides that "[a] multidisciplinary team will be convened to review each [capital] resident's classification/housing status," and that such team "will include representatives from the Unit Team, Classification Administrator, Legal, Security, Behavioral Health, Health Services, and Deputy Wardens."[6] The Policy Memorandum outlines a four-step review process "with the ultimate goal of housing [death-sentenced] residents in general population."[7] At each step of the process, if a death-sentenced inmate "does not qualify to move to the next step . . . based on his current behavior or other circumstances, the MDT will conduct 30-day reviews until each . . . inmate has been transitioned into general population."[8]

The same day that the Policy Memorandum was signed, Defendants moved to dismiss the Complaint, arguing that the case was moot, that Eleventh Amendment immunity applied, and that Plaintiffs failed to exhaust their administrative remedies. On March 2, 2021, Defendants filed the instant motion for sanctions. In a Memorandum and Order issued today, the Court

---

[4] Doc. 12-5 ¶ 6 & Ex. 1 at 1.

[5] Doc. 12-5, Ex. 1 at 1.

[6] *Id.*

[7] Doc. 12-5 ¶ 9.

[8] *Id.*

grants the motion to dismiss for lack of subject matter jurisdiction under the doctrine of mootness; it did not reach the other issues raised in Defendants' motion to dismiss.

## II.     Standards

"[T]he central purpose of [Fed. R. Civ. P.] 11 is to deter baseless filings in the district court . . . ."[9] Pursuant to Rule 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented."[10] Rule 11(b) elaborates on the import of an attorney or party's signature on a pleading:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

The Court evaluates an attorney's conduct under this rule under a standard of "'objective reasonableness—whether a reasonable attorney admitted to practice before the district court

---

[9] *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (citations omitted).
[10] Fed. R. Civ. P. 11(a).

4

would file such a document.'"[11]  "Because our adversary system expects lawyers to zealously represent their clients, [the Rule 11] standard is a tough one to satisfy; an attorney can be rather aggressive and still be reasonable."[12]

The Court's Rule 11 inquiry should proceed in two steps.  First, the Court must determine whether the identified pleading violates Rule 11.[13]  "This typically involves subsidiary findings, such as the current state of the law or the parties' and attorneys' behavior and motives within the context of the entire litigation, as well as a conclusion on the ultimate question whether the pleading violated Rule 11."[14]  If the Court finds that an identified pleading violates Rule 11, then it proceeds in step two to determine the appropriate sanction under Rule 11(c).[15]

Additionally, the Court has inherent authority under 28 U.S.C. § 1927 to "fashion an appropriate sanction for conduct which abuses the judicial process."[16]  "Because of their very potency, inherent powers must be exercised with restraint and discretion."[17]  Although the Court's discretion includes the ability to dismiss as a sanction for severe cases of misconduct, the lesser sanction of attorneys' fees against counsel may be imposed for actions taken "in bad faith, vexatiously, wantonly, or for oppressive reasons."[18]

---

[11] *Collins v. Daniels*, 916 F.3d 1302, 1320 (10th Cir. 2019) (quoting *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015)).

[12] *Id.* (alteration in original) (quoting *Predator Int'l, Inc.*, 793 F.3d at 1182).

[13] *Adamson v. Bowen*, 855 F.2d 668, 672 (10th Cir. 1988).

[14] *Id.*

[15] *Id.*; Fed. R. Civ. P. 11(c)(4).

[16] *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991)).

[17] *Chambers*, 501 U.S. at 44 (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)).

[18] *Id.* at 45–46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258–59 (1975)); *Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1227 (10th Cir. 2015).

**III.     Discussion**

    **A.        Rule 11**

Defendants identify Plaintiffs' Complaint as a pleading that violates Rule 11 in three ways: (1) counsel had knowledge when they filed the Complaint that the challenged policy was "obsolete" because the KDOC was in the process of implementing the revised policy; (2) counsel failed to make a reasonable inquiry into whether Plaintiffs had exhausted their administrative remedies; and (3) the claims are clearly barred by the Eleventh Amendment. Defendants argue further that Plaintiffs' counsel unreasonably delayed dismissing this lawsuit upon receipt of their motion to dismiss, or in the alternative, for summary judgment, which identified the above-stated grounds for dismissal. The Court finds that neither the Complaint, nor the failure to dismiss this case before the Court ruled on Defendants' motion to dismiss, constitute Rule 11(b) violations.

    **1.        The Complaint**

First, Defendants contend that Plaintiffs' counsel filed the Complaint despite having knowledge that the KDOC was revising the challenged policy of automatic and permanent administrative segregation for death-sentenced inmates with no opportunity for review. Defendants rely on Cowger's email, in which he notified Plaintiffs on October 30, 2020, that Defendants were in the process of implementing changes to the policy challenged by the Complaint. The Court easily disposes of this argument. As acknowledged by Defendants' *mootness* rather than *standing* challenge to the Complaint,[19] the policy challenged in the Complaint was still on the books on November 6, 2020, and nothing in Cowger's email indicates otherwise. In fact, Cowger represented in his email that the formal policy change would happen

---

[19] Standing considers whether there is a case or controversy at the time the action is filed, while "mootness ensures it remains one at the time a court renders a decision." *Brown v. Buhman*, 822 F.3d 1151, 1163 (10th Cir. 2016).

on January 1, 2021, which turned out to be incorrect. On January 20, 2021, the KDOC issued the policy change and Defendants moved to dismiss. It was not unreasonable for Plaintiffs to challenge the existing policy—IMPP 20-104 I.B.16—on November 6, 2020. On that date, they had standing, and no formal policy change was in place. Although working toward more privileges for capital inmates starting in 2019, Defendants admit that this process slowed down during the COVID-19 pandemic. And the KDOC had not formalized any of the changes discussed in Cowger's email as of November 6, 2020. Thus, it was reasonable under the circumstances for Plaintiffs to be skeptical about the timing and content of any formal change in policy, and it was not sanctionable to challenge the existing policy.

Second, Defendants contend that Plaintiffs' counsel did not conduct a reasonable inquiry into the facts when pleading in paragraph 26 of the Complaint that Plaintiffs had exhausted the administrative remedies available to them. Exhaustion of administrative remedies is mandatory under the Prison Litigation Reform Act ("PLRA"), and is considered an affirmative defense.[20] Although Plaintiffs subject to the PLRA are not required to plead exhaustion,[21] "[p]art of a reasonable attorney's prefiling investigation must include determining whether any obvious affirmative defenses bar the case."[22] If the attorney "has a colorable argument as to why an otherwise applicable affirmative defense is inapplicable in a given situation," the attorney may file the action.[23]

Here, Plaintiffs' counsel had colorable, nonfrivolous arguments for pleading that Plaintiffs exhausted the administrative remedies available to them. First, they argue that the

---

[20] *Jones v. Bock*, 549 U.S. 199, 211–12 (2007).

[21] *Id.* at 213.

[22] *White v. Gen. Motors Corp.*, 908 F.2d 675, 682 (10th Cir. 1990) (citing William W. Schwarzer, *Rule 11 Revisited*, 11 Har. L. Rev. 1013, 1023–24 (1988)).

[23] *Id.*

lawsuit is not covered by the PLRA because it is not about "prison life," but instead about the constitutionality of KDOC policy.[24] Second, Plaintiffs argue that under *Ross v. Blake*, they did not have remedies available to them to exhaust as to the previous policy of automatic and permanent administrative segregation for capital inmates.[25] The Court did not reach the issue of exhaustion in ruling on Defendants' motion to dismiss and need not determine whether Plaintiffs' arguments on this affirmative defense are meritorious. Instead, the Court finds that Plaintiffs' arguments that the PLRA does not apply and that Plaintiffs did not have remedies available to them are colorable. Thus, Plaintiffs conducted a reasonable prefiling investigation to determine if the exhaustion affirmative defense barred their claims.

Finally, Defendants argue that Plaintiffs' claims were plainly barred by Eleventh Amendment immunity. Again, the Court need not rule on the merits of this defense. It must only determine whether Plaintiffs had a nonfrivolous basis to argue that immunity does not apply to the named Defendants. Here, Plaintiff reasonably and predictably relied on *Ex Parte Young*, which avoids the Eleventh Amendment bar to suit against state officials when the "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective."[26] Defendants complain that the wardens are not properly named because they do not have authority to perform the requested prospective relief, but Plaintiffs have a colorable

---

[24] *See Porter v. Nussle*, 534 U.S. 516, 532 (2002) ("[W]e hold that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." (citation omitted)).

[25] 136 S. Ct. 1850, 1858 (2016) ("Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones. And that limitation on an inmate's duty to exhaust—although significantly different from the 'special circumstances' test or the old CRIPA standard—has real content." (alteration in original)).

[26] *Verizon Md., Inc. v. Pub. Serv. Commc'n*, 535 U.S. 635, 645 (2002) (citations omitted).

claim that they do.²⁷  They argue that Cline and Meyer are the wardens of the prisons where the named Plaintiffs are located.  And they argue that, while Defendant Zmuda as the Secretary of Corrections may be the Defendant with authority for KDOC policy-making, the wardens are responsible for implementing the challenged policy at their respective prisons.  Without commenting on the merits of this argument, the Court finds that Plaintiffs advanced a non-frivolous argument that Defendants are not immune from suit under the Eleventh Amendment under *Ex Parte Young*, which suffices to overcome Defendants' Rule 11(b) challenge.

### 2. Failure to Voluntarily Dismiss

Having found that Plaintiffs' Complaint was not filed in violation of Rule 11, the Court proceeds to consider whether Plaintiffs' failure to dismiss the Complaint after receipt of the January 20, 2021 motion to dismiss, or in the alternative, for summary judgment, violated Rule 11(b).  Nothing about Defendants' motion to dismiss changes the above-analysis except perhaps the change in policy incorporated into their motion to dismiss—by that time, they argued that the case was moot based on the policy change made on the same day that Defendants' filed their motion.  The Court declines to sanction Plaintiffs for responding to the motion rather than dismissing their case.  First, Defendants fail to identify a pleading that violates Rule 11 on this basis.  And second, assuming the operative pleading is Plaintiffs' response brief to the dispositive motion, the Court declines to find that it was filed for an improper purpose.  The response to the motion to dismiss, while ultimately not meritorious on the question of mootness, advanced colorable arguments in opposition to dismissal.  Specifically, Plaintiffs raised the non-

---

²⁷ *See, e.g.*, *Hill v. Kemp*, 478 F.3d 1236, 1259 (10th Cir. 2007) ("Following the Supreme Court's most recent and definitive guidance in *Verizon Maryland*, the sole question for us becomes whether the relief sought by [the plaintiff] is prospective, not just in how it is captioned but also in its substance.").

frivolous argument that the voluntary cessation exception to mootness applies here. The Court finds no Rule 11(b) violation in this filing.

### B. Inherent Authority

Defendants offer no reasons for this Court imposing sanctions under its inherent authority that differ from its reasons in support of Rule 11 sanctions. For the reasons already described, the Court declines to exercise its discretion and impose sanctions under 28 U.S.C. § 1927. There are simply no grounds upon which this Court can find that Plaintiffs or their counsel filed this action in bad faith, vexatiously, wantonly, or for oppressive reasons.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendants' Motion for Sanctions (Doc. 16) is **denied.**

**IT IS SO ORDERED.**

Dated: May 10, 2021

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE
